IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:18-cr-74 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| JASON MIZE, | : | |
| Defendant. | : | |

## ORDER DENYING MOTION TO SUPPRESS

This case is before the Court on the Motion to Suppress (Doc. 18) filed by Defendant Jason Mize. The United States filed a Response (Doc. 20), to which Defendant filed a Reply (Doc. 22). The Court held a hearing, during which the parties jointly requested to submit the matter on the briefs, thus making it ripe for review. For the reasons stated below, Defendant's Motion to Suppress (Doc. 18) is **DENIED**.

### FACTS

Defendant Mize worked at the Hamilton County Justice Center ("HCJC") as a Deputy Sheriff in Intake. On August 20, 2016, deputies with the Hamilton County Sheriff's Office ("HCSO") arrested a 61-year old man ("M.M.") and brought him to HCJC for processing. As part of his processing, a nurse interviewed M.M. to prepare medical paperwork, during which M.M. refused to sign a medical release form. Defendant Mize approached M.M., pulled him to his feet, led him toward a holding

cell, and pushed him inside, causing M.M. to collide headfirst into a cement wall. M.M. was eventually transported to a local hospital, where he received treatment for, among other things, two lacerations in his head and a fracture of his femur.

Immediately after the incident, Mize told his supervisor that M.M.'s injuries were caused when M.M. slipped and fell in his cell. The HCSO conducted an internal investigation and, eventually, the FBI also opened an investigation. During these investigations, FBI agents spoke with two HCSO deputies, who both stated they had recently received Facebook "friend requests" from an account with the profile name "Jason Mike" (hereinafter, "Facebook Account"). In addition, FBI Agents spoke with a third HCSO deputy who participated in M.M.'s arrest. This deputy disclosed that "Jason Mike" had sent him a Facebook message that read, in part: "So I got so much shit for this old man you brought in all because I pushed this bastard as he resisted me, then he falls as soon as I push him in G holding… Got my hearing tomorrow just wanted you to know if you have anything to add please feel free to add this is so dumb."

The FBI sought and obtained a search warrant from Magistrate Judge Bowman for the Facebook Account ("Facebook Warrant"). The Facebook Warrant was prepared and divided into two Attachments. Attachment A outlined the "Property to Be Searched," and ordered Facebook to search all "information associated with the Facebook account located at: [the Jason Mike URL]." Attachment B outlined the "Particular Things to be Seized," and is further divided into two subsections. Subsection I required Facebook to disclose to the Government what was, in effect, an

entire copy of the Facebook Account.[1] Subsection II then outlined the information the Government would seize: "[a]ll information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 242 [Excessive Force], 1519 [Falsification of Records] involving JASON MIZE since August 1, 2007, including…"

In other words, the warrant directed Facebook to disclose to the FBI an entire copy of the Facebook Account; the FBI then searched through the account and — in the Government's opinion — only then "seized" information that constituted evidence of the alleged crimes.[2]

The Facebook Warrant return confirmed or revealed, among other things, that: (1) Mize owned the Facebook Account; (2) the above message was sent from that account; (3) Mize had described the M.M. use of force incident on numerous other occasions; (4) Mize had contacted potential witnesses in regards to the incident; and (5) Mize had engaged in charged commentary with other officers regarding use of force against inmates more broadly, including describing other incidents involving excessive force. Although the Facebook Warrant sought evidence of two alleged crimes — 18 U.S.C. § 242 (Excessive Force) and 18 U.S.C. § 1519 (Falsification of Records) — Mize

---

[1] The information Facebook was required to disclose included, in part: all contact and personal identifying information; all activity logs for the account and all other documents showing the user's posts and other Facebook activities; all photos and videos uploaded by the user; all photos or videos in which the user was tagged; all profile information, including news feed, status updates, links, wall postings, friend lists, friend requests, groups and networks, etc.; all records of communications; all location "check ins" and other location information; all IP logs; all "likes"; all "fan" pages; all Facebook searches performed by the account; all information about access and use of Facebook Marketplace; all privacy settings; and more. (Doc. 18-1.)
[2] Discovery provided to Defendant Mize totals close to 1,000 pages of information regarding the Defendant's Facebook account. (Doc. 18.)

was subsequently indicted on only one count for violation of 18 U.S.C. § 242.

## ANALYSIS

Mize now moves to suppress all evidence obtained from the Facebook Warrant based on the following three arguments: (1) the affidavit attached to the Facebook Warrant application failed to establish probable cause; (2) the warrant is overbroad in scope and time; and (3) the good faith exception does not apply. Each of these arguments are discussed in turn below.

**I. Probable Cause**

The Fourth Amendment requires that, where an affidavit is submitted as the basis for probable cause in support of a search warrant, the affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) (*quoting Illinois v. Gates*, 462 U.S. 213, 239 (1983)). "In order to make this determination, the issuing judge must undertake a 'practical, common sense' evaluation of 'all of the circumstances set forth in the affidavit before him.'" *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008) (*quoting Gates*, 462 U.S. at 238). Under this "totality of circumstances" approach, courts should afford "considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found." *Williams*, 544 F.3d at 686 (*quoting United States v. Caicedo*, 85 F. 3d 1184, 1192 (6th Cir. 1996) (citations omitted) (alterations in original)). The court should not engage in "line-by-line scrutiny" of the affidavit, which must rather be "judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v.*

4

*Allen*, 211 F.3d 970, 973-5 (6th Cir. 2000).

The affidavit must also "establish a nexus between the place to be searched and things to be seized, such that there is a substantial basis to believe that the things to be seized will be found in the place searched." *Ellison v. Balinski*, 625 F.3d 953, 958 (6th Cir. 2010). "For the requisite nexus to exist—regardless of whether the underlying crime requires the use of social media or an electronic device—the affidavit in support of the search warrant must establish *why* the government believes that relevant evidence may reside on the particular suspect's Facebook account." *United States v. Whitt*, 2018 WL 447586, at *2 (S.D. Ohio, Jan. 17, 2018) (emphasis added).

Moreover, when reviewing a search warrant issued by a magistrate judge, the reviewing court should give great deference to the magistrate judge's probable cause determination and reverse that decision only if it was arbitrarily made. *United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009).

Here, Defendant Mize argues that all evidence seized as a result of the Facebook Warrant must be suppressed because the warrant affidavit lacks probable cause in two ways. First, Defendant Mize contends that the affidavit fails to establish a nexus between the Facebook Account and the two alleged crimes listed on the Facebook Warrant application. Second, Defendant Mize argues that the affidavit is "devoid of any reference to" any violation of 18 U.S.C. § 1519 – Falsification of Records.

### A. "Nexus"

In his first argument, Defendant Mize claims that the warrant affidavit is "completely devoid" of any evidence "implicating *any element* of *any suspected claim*."

5

He therefore argues that no nexus exists between the Facebook Account and either 18 U.S.C. §§ 1519 or 242. In support, Mize relies heavily on Judge Barrett's opinion in *Whitt*, where a warrant was held unconstitutional for failing to establish a nexus between a Facebook account and the alleged crimes. 2018 WL 447586. In *Whitt*, the affidavit supporting the warrant contained 19 paragraphs that detailed Facebook's general ability to capture potentially incriminating information but was "otherwise devoid of information explaining *why* the agent believed such evidence may reside in Defendant's Facebook account." 2018 WL 447586, at *3. Judge Barrett held that the affidavit "fail[ed] to take the additional step of establishing information known to the agent making it likely that 'specific' evidence [was] likely to reside in Whitt's particular Facebook account." 2018 WL 447586 at *4. Moreover, the *Whitt* warrant was prepared by the same FBI agent and reviewed by the same Magistrate Judge as the warrant in our case. Defendant Mize thus attempts to persuade the Court that the same agent and same Magistrate Judge made the same mistakes again here.

This case, and this affidavit, are not similar to *Whitt*. As Defendant Mize adamantly points out, the affidavit at issue contains the same 19 boilerplate paragraphs describing Facebook as the affidavit in *Whitt*. But here, the FBI agent took the additional step that Judge Barrett called for in *Whitt* and set forth specific facts that demonstrate why the FBI believed they would find evidence of the alleged crimes on the Facebook Account. For example, the affidavit details how multiple HCSO deputies disclosed that they had received Facebook friend requests from the Facebook Account, an account which they told the FBI they believed was actually maintained by Jason

6

Mize. The affidavit also describes a third deputy who showed the agents screenshots of a Facebook direct message in which "Jason Mike" contacted a witness and specifically discussed the alleged use of force incident. An FBI agent then viewed the Facebook Account and, based on what was publicly accessible, determined that the individual pictured as "Jason Mike" resembled Defendant Jason Mize.

In other words, the warrant affidavit clearly establishes a nexus between the alleged crimes and the Facebook Account because it detailed how FBI agents learned that an individual who looked like the Defendant, had a similar name as the Defendant, and was believed to be the Defendant, was contacting witnesses to discuss the alleged crime—on Facebook.

### B. Probable Cause as to 18 U.S.C. § 1519 – Falsification of Records

Second, Defendant Mize argues, more specifically, that the warrant affidavit lacks probable cause because it is "devoid of any reference to" any violation of 18 U.S.C. § 1519. The Court, however, does not agree with the Defendant's characterization of the affidavit. Section 1519 is a broadly worded statute that makes it a crime when someone "knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States."

Likewise, the definition of "probable cause" is also broad. *Kaley v. United States*, 571 U.S. 320, 134 S.Ct. 1090, 1103 (2014) ("Probable cause . . . is not a high bar: It requires only the 'kind of 'fair probability' on which 'reasonable and prudent [people], not legal

7

technicians, act.'" (citations omitted) (alteration in original)). Moreover, both sides agree that a magistrate judge "may infer a nexus between a suspect and his residence, depending upon 'the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places.'" *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) (*quoting United States v. Savoca*, 761 F.2d 292, 298 (6th Cir. 1985).

Applying these principles here, the Court finds that the Magistrate Judge's probable cause determination was justified. The warrant affidavit described how Defendant Mize (1) gave false statements to his supervisor, indicating that M.M.'s injuries were caused when M.M. slipped and fell in his cell, and (2) was contacting witnesses on Facebook in an apparent attempt to influence how they would testify. Based on these facts, common-sense would suggest that there was a fair probability that evidence of Defendant Mize attempting to falsify records would be found on the Facebook Account.

## II. "Warrant is Overbroad in Scope and Time"

Defendant Mize next argues that the warrant is invalid because it was overbroad, both in scope and time. Mize thus contends that his constitutional rights were violated since the Fourth Amendment requires that warrants must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. The particularity requirement is intended to ensure that "those searches deemed necessary should be as limited as possible" in order to prevent "general, exploratory

rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403, U.S. 443, 467 (1971). This is because the chief evil that prompted the framing and adoption of the Fourth Amendment was the "indiscriminate searches and seizures" conducted by the British "under the authority of 'general warrants.'" *Payton v. New York*, 445 U.S. 573, 583 (1980); *see also Arizona v. Gant*, 556 U.S. 332, 345 (2009) ("[T]he central concern underlying the Fourth Amendment [is] the concern about giving police officers unbridled discretion to rummage at will among a person's private effects.").

Moreover, the Second Circuit has observed that general searches of electronic data pose an "especially potent threat to privacy because hard drives and e-mail accounts may be 'akin to a residence in terms of the scope and quantity of private information [they] may contain.'" *United States v. Shipp*, 392 F. Supp. 3d 300, 307 (E.D.N.Y. 2019) (*quoting United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017). And "[t]his threat is further elevated in a search of Facebook data because, perhaps more than any other location—including a residence, a computer hard drive, or a car— Facebook provides a single window through which almost every detail of a person's life is visible." *Id.*

Yet the search warrant at issue here almost assuredly encroaches on each of the principles espoused above as it essentially allowed law enforcement to "rummage" through nine years of activity on the entire Facebook Account. Although the Sixth Circuit has not yet addressed this precise issue, courts across the nation have analyzed the constitutionality of nearly identical Facebook search warrants. Based on this case law, an apparent pattern has emerged: search warrants that ask for an entire copy of a

9

Facebook account, such as the one at issue here, are likely overbroad, but evidence obtained therefrom is still admissible under the *Leon* good-faith exception. *See, e.g., United States v. Hamilton*, No. 6:18-CR-57-REW-10, 2019 WL 4455997, at *4 (E.D. Ky. Aug. 30, 2019) (search warrant for ten months of activity on entire Facebook account was overbroad but good-faith exception applied); *United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017) (although Facebook warrant likely overbroad, good-faith exception applied); *U.S. v. Flores*, 802 F.2d 1028 (9th Cir. 2015) (same); *United States v. Shipp*, 392 F. Supp. 3d 300, 307 (E.D.N.Y. 2019) (same); *United States v. Chavez*, 423 F. Supp. 3d 194 (W.D.N.C. 2019) (expressly held that Facebook warrant violated Fourth Amendment but good-faith exception still applied); *United States v. Burkhow*, No. 19-CR-59-CJW-MAR, 2020 WL 589536, at *11 (N.D. Iowa Feb. 6, 2020) (same).

Accordingly, Defendant Mize's second argument in favor of suppression—that the warrant was overbroad both in scope and in time—becomes irrelevant if the Court determines that the *Leon* good-faith exception applies.

### III. "Good-Faith Exception"

The *Leon* good-faith exception to the exclusionary rule permits the admission of evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Leon*, 468 U.S. 897 (1984). Stated differently, "evidence seized pursuant to a warrant, even if in fact obtained in violation of the Fourth Amendment, is not subject to the exclusionary rule if an objectively reasonable officer could have believed the seizure valid." *United States v. McClain*, 444 F.3d 556, 564 (6th Cir. 2005) (citation omitted). "In general, suppression of evidence

10

obtained pursuant to a search warrant later found to be defective 'should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.'" *United States v. McClain*, 444 F.3d 556, 564 (6th Cir. 2005) (*quoting Leon*, 468 U.S. at 918).

In particular, the *Leon* court identified four circumstances in which suppression is appropriate, two of which Defendant Mize argues are applicable here. First, Mize argues that "the affidavit is so lacking in indicia or probable cause that a belief in its existence is objectively unreasonable." But since the Court has already held that the Facebook Warrant is supported by facts that demonstrate a strong basis for probable cause, this argument is rendered moot.

Second, Defendant Mize argues that the issuing Magistrate Judge "abandoned her neutral and detached role and served as a rubber stamp for the agent." This argument is equally unpersuasive. Because the affidavit clearly established probable cause, it was reasonable for the Magistrate Judge to issue the warrant. The only contention Defendant Mize provides in support of this argument is that the Magistrate Judge previously issued the unconstitutional warrant in *Whitt*. But as described above, *Whitt* is not applicable. And regardless, even in *Whitt*, where—unlike in this case—the affidavit was found to be lacking in probable cause, Judge Barrett still held that the good-faith exception applied.

In sum, there is no evidence that suggests that the FBI agent "knew or should 'be charged with knowledge that the search was unconstitutional under the Fourth Amendment' or that the magistrate abandoned his or her neutral and detached

11

function." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 649 (6th Cir. 2003) (*quoting Leon*, 468 U.S. at 919). Accordingly, even if the Facebook Warrant was overly broad, the good-faith exception to the exclusionary rule applies. This ruling is overwhelmingly supported by the case-law existing in courts across the country. *Supra* at p. 9.

## CONCLUSION

For the reasons articulated above, the Motion to Suppress (Doc. 18) is **DENIED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: *Matthew W. McFarland*
JUDGE MATTHEW W. McFARLAND